# In the United States Court of Federal Claims

Nos. 23-693C, 23-720C, and 24-493C

(Filed: July 11, 2024)[1]

| | |
|---|---|
| **ACCELGOV, LLC,** | ) |
| And | ) |
| **SLICOM JV,** | ) |
| *Plaintiffs,* | ) |
| **v.** | ) |
| **THE UNITED STATES,** | ) |
| *Defendant,* | ) |
| And | ) |
| **ISI-MARKON JV, LLC,** | ) |
| *Defendant-Intervenor.* | ) |

*W. Brad English,* Maynard Nexsen, Huntsville, AL, for Plaintiff.  With him on the briefs were *Jon D. Levin*, *Emily J. Chancey*, and *Taylor R. Holt*.

*Cara Lyn Sizemore*, Wiley Rein LLP, Washington, DC, for Plaintiff-Intervenor.  With her on the briefs were *Lisa M. Rechden* and *Vaibhavi Patria*.

*John Hugh Roberson*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant.  With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Douglas K. Mickle*, Assistant Director.  Also on the briefs were *May Sena*, Assistant General Counsel, and *Lisa Marie Golden*, Department of Defense.

---

[1] On July 3, 2024, the Court filed this opinion and order under seal and provided the parties the opportunity to propose redactions.  ECF No. 114. On July 11, 2024, the parties filed proposed redactions, ECF No. 115, which this Court adopts in part, and accordingly reissues this public version of this opinion and order.  Redacted text has been replaced with [***].  Minor typographical errors from the sealed version of this opinion and order have also been corrected.

*Aron Caraway Beezley*, Bradley Arant Boult Cummings LLP, Washington, DC, for Defendant-Intervenor.  With him on the briefs was *Lisa A. Markman*.

**OPINION AND ORDER**

**SOLOMSON, *Judge.***

This bid-protest-type case has been bouncing around for more than a year, with the docket reflecting over 100 filings or orders.  Two parties have even swapped positions — from plaintiff to defendant-intervenor and vice-versa — since the inception of this case.  The remaining original plaintiff is on its third amended complaint.  Now pending before the Court is the parties' third round of cross-motions for judgment on the administrative record.   For the reasons explained below, this Court grants the government's motion with respect to one plaintiff and remands the matter with respect to the other.  Whether this case will proceed any further will have to await yet another remand.

I.      **Factual Background and Procedural History**

The United States Department of Defense, Washington Headquarters Services ("WHS" or the "Agency") issued a solicitation for a small business set aside, Indefinite Delivery Indefinite Quantity Single Award Contract for Construction Management Technical Support Services on December 9, 2022 (together with Amendments 1-4, hereafter, "the Solicitation").  AR 1, 3, 7.  The Solicitation identified three evaluation factors.  Factor I (Technical Proposal) and Factor II (Past Performance) were of "equal importance" and, when combined, were "more important than" Factor III (Price).  AR 86.  The Solicitation provided that WHS "will award a contract…to the responsible offeror whose offer, conforming to the solicitation, represents the best overall value to the Government when all non-price and price-related evaluation factors are considered."  AR 86.  In conducting the best value determination, and consistent with Federal Acquisition Regulation ("FAR") requirements, WHS may award a contract to the offeror with the superior proposal even if it is more costly to the Government.  *Id.*  The Agency initially awarded the contract to SLICOM on April 27, 2023.  AR 1681, 1717.

After receiving notice that they had not been selected for the award, both AccelGov, LLC, and ISI-Markon JV, LLC, filed complaints in May 2023 challenging the Agency's evaluation and award decision pursuant to 28 U.S.C § 1491(b).  ECF No. 1, *AccelGov, LLC v. USA*, No. 23-693; ECF No. 1, *ISI-Markon, LLC v. USA*, No. 23-720.  The Court consolidated those two actions, with *AccelGov* serving as the lead case; SLICOM successfully moved to intervene as a defendant.  ECF Nos. 15, 22.

The government thereafter moved to dismiss the protests pursuant to Rules 12(b)(1) and 12(b)(2) of the Rules of the Court of Federal Claims ("RCFC") based on

WHS's planned corrective action. ECF No. 41. The government argued that the corrective action would provide AccelGov and ISI-Markon with the relief they sought in their amended complaints, ECF Nos. 35-36, because the Agency had cancelled the contract award to SLICOM and intended to solicit new proposals, reassess the plaintiffs' offers, and undertake other corrective action in accordance with law. ECF No. 41 at 2, 4. Both AccelGov and ISI-Markon opposed the motion to dismiss and the corrective action. *Id.* at ECF Nos. 42-43.

On July 20, 2023, this Court denied, without prejudice, the government's motion to dismiss. ECF No. 44, *AccelGov, LLC v. United States*, 166 Fed. Cl. 606, 612 (2023). The Court concluded that the government had offered no explanation for how the opportunity to submit revised proposals related to, or would rectify, Plaintiffs' alleged defects with the Agency's evaluation of the already-submitted proposals. 166 Fed. Cl. at 611-12. With the limited information available at that point, the Court lacked any basis to definitively conclude that the government's proposed steps mooted the case such that dismissal was required. *Id.* at 612. Moreover, even if the proposed corrective action were to moot AccelGov's and ISI-Markon's pending claims, the then-Plaintiffs could amend their complaints to challenge the propriety of that corrective action. *Id.* This Court instructed the parties to file a joint status report proposing a schedule for further proceedings. *Id.*

On August 8, 2023, after considering the parties' differing proposed approaches to the still-pending dispute, the Court adopted ISI-Markon's proposal, in which the then-Plaintiffs would file amended complaints to challenge the government's planned corrective action. ECF No. 50, *AccelGov, LLC v. United States*, 2023 WL 5091196, *1, *1-2 (Fed. Cl. Aug. 8, 2023). AccelGov filed its second amended complaint on August 14, 2023. ECF No. 51. ISI-Markon filed its second amended complaint the same day, ECF No. 52, as well as a motion for judgment on the administrative record ("MJAR"), ECF No. 57. AccelGov filed its MJAR on August 29, 2023. ECF No. 58. The government and SLICOM both responded with cross-MJARs, and each Plaintiff filed a reply brief. ECF Nos. 65-67, 70, 71. The Court held oral argument on this round of MJARs on December 19, 2023. Minute Order (Dec. 19, 2023).

Following oral argument, and with the support of all parties, the Court remanded the case to the Agency to take the following actions: (1) re-evaluate SLICOM's past performance submissions and issue a new Factor II confidence assessment; (2) review and reconsider the protesters' technical evaluations to determine whether any additional corrective action was needed; and (3) issue a new best value determination and award decision. ECF No. 83. The Court thus denied the parties' MJARs as moot. On remand, the Agency conducted a re-evaluation and, on March 13, 2024, determined that ISI-Markon's proposal represented the "best overall value to the Government when all non-price and price-related evaluation factors [were] considered." AR 1906, 1912.

On April 1, 2024, AccelGov filed its third amended complaint, this time challenging the award to ISI-Markon.  ECF No. 88.  ISI-Markon filed an unopposed motion to intervene, which this Court granted.  ECF Nos. 89, 92.  SLICOM — no longer the awardee — filed an initial complaint. ECF No. 1, *SLICOM v. USA*, 23-693C.  After AccelGov's and SLICOM's cases were consolidated, ECF No. 92, SLICOM filed an amended complaint.  ECF No. 98.  The parties all filed cross-MJARs and response and reply briefs.  ECF Nos. 96-97, 101-103, 105-106, 111-113.  On June 27, 2024, the Court held oral argument on the parties' most recent round of MJARs.  Minute Order (June 27, 2024).

## II.    Standard of Review

### A.  Administrative Procedure Act Review

Pursuant to 28 U.S.C. § 1491(b)(4), this Court applies the standard of review contained in the Administrative Procedure Act ("APA") § 10(e), 5 U.S.C. § 706.  *Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 981 (Fed. Cir. 2019).  In accordance with the APA, this Court reviews an agency's procurement decisions to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  A plaintiff succeeds on the merits where it demonstrates that either: "(1) the [agency]'s decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted).

An agency's decision is arbitrary and capricious under the APA standard of review if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (alteration in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1358 (Fed. Cir. 2015) (quoting *Ala. Aircraft Indus.*, 586 F.3d at 1375); *Sharpe v. United States*, 935 F.3d 1352, 1358–59 (Fed. Cir. 2019).

### B.  The Role of the Administrative Record and this Court's Fact Finding

This Court conducts its APA assessment of the government's challenged procurement decision(s) — in an action pursuant to 28 U.S.C. § 1491(b) — via motions for judgment on the administrative record, RCFC 52.1(c), a process "properly understood as intending to provide for an expedited trial on the record."  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).  The process is "designed to provide for trial on a paper record, *allowing fact-finding by the trial court*."  *Id.* (emphasis added).  In deciding cross-motions for judgment on the administrative record, this Court considers "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on

the evidence of record."  *XOtech, LLC v. United States*, 950 F.3d 1376, 1380 (Fed. Cir. 2020) (quoting *Palantir USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018)); *see also Harmonia Holdings Grp., LLC v. United States*, 20 F.4th 759, 766 (Fed. Cir. 2021).

The primary difference between a typical trial and one conducted on the administrative record is that, in the latter, new evidence ordinarily may not be considered.  Both the nature of APA review and this Court's rules "restricts the evidence to the agency record, as may be supplemented consistent with [the law of this circuit]." *Bannum*, 404 F.3d at 1356.  No party has sought to supplement the Agency's administrative record in this case.

### C.  Determining Prejudice on the Merits

The Federal Circuit has instructed that "[t]he trial court [is] *required* to determine whether . . . errors in the procurement process significantly prejudiced [a plaintiff]." *Bannum*, 404 F.3d at 1353 (emphasis added); *id.* at 1356 (holding that "the trial court [is required] to make factual findings on prejudice from the record evidence").[2]  In a post-award protest, the plaintiff bears the burden of showing not only that the agency's decision is flawed under the APA standard of review but also that some prejudice flowed from that error.  In short, a plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the errors."  *Id.* at 1353 (citing *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1313, 1319 (Fed. Cir. 2003) and *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).[3]

Determining whether an agency's error is prejudicial to the plaintiff "is always required before setting aside a bid award, regardless of whether the error identified at

---

[2] Thus, the Federal Circuit noted that it "reviews such [factual] findings for clear error."  *Bannum*, 404 F.3d at 1354 ("Nor should the review of a Court of Federal Claims prejudice determination be premised on an 'arbitrary and capricious' review.  That review standard goes to the agency's compliance with the law, whereas the prejudice determination assesses whether an adjudged violation of law warrants setting aside a contract award."); *id.* at 1357 ("[T]he trial court's factual determination on prejudice . . . is entitled to review for clear error like any finding in a bench trial, and the special concerns applicable to bid protest actions do not alter that review here.").

[3] *See also Noble Supply & Logistics LLC v. United States*, 168 Fed. Cl. 439, 447 (2023) ("[T]he court holds a trial on the administrative record and must determine whether a party has met its burden of proof based solely on the evidence contained in that record." (citing *Bannum*, 404 F.3d at 1355)); *Navarre Corp. v. United States*, 168 Fed. Cl. 361, 367-68 (2023) (explaining that "the parties are limited to the administrative record, and the Court must make findings of fact as if it were conducting a trial on a paper record" and "will then determine whether a party has met its burden of proof based on the evidence in the record" (*Bannum*, 404 F.3d at 1354-55)); *Karthik Consulting, LLC v. United States*, 168 Fed. Cl. 95, 103 (2023) ("The protestor has the burden to show by a preponderance of evidence the arbitrary and capricious nature of the agency's decision.").

the first step was arbitrary and capricious action or, instead, a violation of law." *Sys. Stud. & Simulation, Inc. v. United States,* 22 F.4th 994, 996–97 (Fed. Cir. 2021) (citing *DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1308 n.6 (Fed. Cir. 2021) ("The APA does not provide an exception to the prejudicial-error rule for arbitrary and capricious action.")). Specifically, "[d]emonstrating prejudice" requires that "the plaintiff show more than a bare possibility of receiving the award." *Id.* (citing *Bannum*, 404 F.3d at 1358, where the Federal Circuit affirmed the trial court's determination that the plaintiff had not demonstrated a substantial case of award because its "argument rest[ed] on mere numerical possibility, not evidence"). The Federal Circuit has further reaffirmed that it "review[s] the legal standard for prejudice de novo," but this Court's "factual findings underlying the prejudice determination for clear error." *Id.* (citing *WellPoint Military Care Corp. v. United States*, 953 F.3d 1373, 1377 (Fed. Cir. 2020) (citing *Bannum*, 404 F.3d at 1353–54)).

## III.   SLICOM'S Protest

During oral argument, the Court indicated that it would grant the government's MJAR with respect to SLICOM's protest and correspondingly deny SLICOM's MJAR. During oral argument, the Court articulated its rationale but nevertheless summarizes it again here.

SLICOM alleges that: (1) the Agency irrationally concluded that ISI-Markon's Building Controls-Automation Engineer III, Mr. [***], had the required experience, ECF No. 98 (SLICOM's Am. Compl.) ¶ 2; (2) the Agency irrationally assigned ISI-Markon's key personnel strengths for having Leadership in Energy and Environmental Design ("LEED") *training,* as opposed to LEED *accreditation, id.* ¶ 46; and (3) the Agency irrationally assigned ISI-Markon a strength for its proposed transition manager, *id.* ¶ 4. *See* ECF. No. 97 (SLICOM's MJAR) at 14-20. The Court addresses each issue, in turn.

### A.   Mr. [***]'s Qualifying Engineering Experience

The Solicitation required the Building Controls-Automation Engineer III ("BCS/BAS III") to have significant "engineering experience" designing building controls or construction operations or maintenance. Specifically, the BCS/BAS III was required to have a "[m]inimum of 15 years engineering experience in building controls design, construction operations or maintenance;" *or* a "[m]inimum of 10 years engineering experience in building controls design, construction operations or maintenance" and "2 years WHS Pentagon experience pending government acceptance." AR Tab 1a at 146-47 (emphasis added). A candidate for this role qualifies under the Solicitation if his experience matches either of these two distinct descriptions, a proposition with which counsel of record for SLICOM readily agreed.

SLICOM claims that that Mr. [***]'s engineering experience obtained prior to his bachelor's degree in 2013 does not qualify as engineering experience for the purpose of the Solicitation. ECF No. 97 at 15. As SLICOM conceded during argument, however, the Solicitation contains no such requirement. There is simply no provision mandating an engineering degree as a prerequisite to obtaining creditable engineering experience. SLICOM argued that the requirement is self-evident, but the Court finds that, in the absence of a provision containing such a requirement, WHS reasonably exercised its discretion in crediting Mr. [***]'s pre-2013 documented engineering experience as such. AR Tab 16 at 1290-92. When this experience is credited, Mr. [***] fulfills both sets of requirements for BCS/BAS III. AR Tab 16 at 1290 ("Mr. [***] … meets the BAS II position requirement and has more than three years' of WHS Pentagon experience. Cumulatively, Mr. [***] has 18 years of relevant experience, 15+ years of engineering experience in building controls design, construction, operations and maintenance.").

At a minimum, the absence of any specifics in the Solicitation defining creditable engineering experience renders the Solicitation patently ambiguous and SLICOM's protest untimely. *See Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) ("[A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims."); *Bell BCI Co. v. United States*, 72 Fed. Cl. 164, 169 (2006) (noting that an "undefined" term is at least "potentially ambiguous"); *cf. Ward v. Dixie Nat. Life Ins. Co.*, 257 F. App'x 620, 627 (4th Cir. 2007) (holding that "actual charges," an undefined phrase used repeatedly in an insurance policy, constitutes a patent ambiguity).

## B. Agency's Assignment of Personnel Strengths for LEED Training

SLICOM also challenged the Agency's assignment of a strength to ISI-Markon for its proposed personnel's having LEED training. ECF No. 97 at 18. While SLICOM may have given the Court reason for serious pause if the Agency had assigned a strength for LEED training to ISI-Markon *while neglecting* to assign a strength to SLICOM for LEED accreditation, it was squarely within the Agency's discretion and perfectly rational for it to assign a strength for LEED training. *See, e.g.*, *LB&B Assocs., Inc. v. U.S.*, 160 Fed. Cl. 710, 729 (2022) ("The arbitrary and capricious standard is highly deferential, so the Court defers to NARA's decision to assess . . . a strength for past performance . . ."). That conclusion makes sense given that the Solicitation required neither LEED training nor accreditation. The Court rejects SLICOM's contention that, because LEED training is amorphous and thus does not communicate the same benefits as LEED accreditation, the former "offers no benefit to the Government." ECF No. 106 at 10. Accreditation may be better than mere training, but that does not preclude the government from assigning a strength for the latter. Where, as here, SLICOM makes no allegation of unequal treatment, this protest ground is rejected as well.

### C. Agency's Assignment of a Strength for its Proposed Transition Manager

The Agency assigned ISI-Markon a strength under Sub-Factor B (Transition Plan) of Factor I (Technical Proposal) for its transition manager, Mr. [***]. AR Tab 45 at 1892. SLICOM challenged this strength as "inconsistent with ISI-Markon's proposal." ECF No. 97-2 at 20-21. SLICOM insisted that "the transition manager will rely on the key personnel to handle the transition-related activities, which will not actually relieve the key personnel's burden." ECF No. 106 at 12.

This Court agrees with ISI-Markon, however, that its transition manager will assume responsibility for transition work that otherwise would be performed by program managers or key personnel. As ISI-Markon explained in its reply brief, "[i]f the purpose of the transition manager was not to perform the transition to ease the burden on other key personnel…then there would be no reason to propose a transition manager at all." ECF No. 113 at 19. Unlike SLICOM's argument regarding engineering experience, ISI-Markon's contention here *does* strike the Court as self-evident in light of the administrative record. That is because the Solicitation did not require offerors to propose a transition manager to begin with. The government thus rationally concluded that proposing a dedicated transition manager offered an improvement over the baseline requirement. Accordingly, WHS rationally assigned ISI-Markon a strength for its transition plan.

* * * *

SLICOM did not meet its burden to prove a prejudicial error — or any error — within the administrative record. The government and ISI-Markon are entitled to judgment on the administrative record with respect to SLICOM's amended complaint.

## IV.   AccelGov's Protest

In its latest amended complaint, AccelGov asserted that the contracting officer's tradeoff analysis was conclusory and failed to justify the nearly $[***] million premium it would pay for ISI-Markon's offer (as compared to AccelGov's). ECF No. 88, ¶ 43.

The Source Selection Authority ("SSA") in this procurement was the contracting officer, but his tradeoff analysis is all but circular. The SSA explained:

> ISI Markon's proposal has an exceptional approach and understanding of the technical requirements and presents an exceptional approach to manage, staff, and ensure successful delivery of each task order to accomplish WHS'[s] mission, which is worth the price premium over AccelGov's proposal . . . because ISI Markon's proposal is technically superior, and

> I have substantial confidence in ISI-Markon's ability to
> successfully perform the requirements.

AR 1904. Obviously, this says nothing more than that ISI-Markon's price premium is worth it because of its technical superiority, but an agency never pays a price premium for a technically inferior proposal. The SSA further described ISI-Markon's "higher advantage to the Government overall because [of] its offered strengths" but in the absence of any explanation it does not follow that "it is in the best interest of the Government" to spend nearly $[***] million more for those strengths. AR 1904.

In other words, merely reciting a proposal's strengths or referencing its technical superiority is insufficient. In a best value procurement, the government can no more select *without explanation* a technically superior proposal at any cost (merely because it is better) than it can select a low-priced technically acceptable proposal (merely because it offers savings). What is required pursuant to applicable FAR provisions is an explanation of *why* the government has decided to pay more for technical superiority (or why the savings justifies a lower-rated proposal). *See, e.g.*, FAR 15.101-1 (providing that "the Government will conduct a 'best value' tradeoff, in which differences in non-price factors and evaluated price will be compared between the Offerors in order to determine which Offeror represents the best value to the Government"); FAR 15.308 (providing that "[t]he source selection decision shall be documented, and the documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs"). Again, the required tradeoff analysis cannot be merely that the winning proposal is technically superior. *See Serco Inc. v. United States*, 81 Fed. Cl. 463 (2008) (Allegra, J.); *Frawner Corp. v. United States*, 161 Fed. Cl. 420 (2022) (Roumel, J.).

In *Serco*, while the agency found certain technical proposals ranked higher than others, it did not explain whether the relatively minor differences in technical scores evidenced technical superiority, nor did the agency explain how or why the added value of any one proposal was worth the extra expense. *Serco*, 81 Fed. Cl. at 498. There was "scant discussion of the significance of those difference in terms of contract performance or agency needs, and even less as to whether it was worth paying a particular premium to obtain that advantage." *Id.* Judge Allegra held that conclusory statements "devoid of any substantive content" in the tradeoff analysis are insufficient to satisfy the FAR's documentation requirements. *Id.* at 497 (discussing FAR 15.101-1); *see also id.* at 496-97 (discussing FAR 15.308). While an agency need not quantify each benefit of a contract, it is nonetheless required to document how the benefits of a more expensive proposal — particularly one that is [***] percent higher-priced — "merit paying the additional cost." *Id.* at 498. If the agency could perform a tradeoff analysis by merely reciting that a higher-priced proposal was rated technically superior to a lower-priced proposal, then "performing a tradeoff analysis [would be] truly a waste of good paper." *Id.*

In *Frawner*, the Air Force did not document its rationale for why the awardee's slightly higher quality ratings outweighed paying as much as 30 to 40 percent more. *Frawner*, 161 Fed. Cl. at 461. Judge Roumel held that conclusory statements could not satisfy the FAR's requirements. *Id.* at 464. Judge Roumel explained that "while an agency's best value determination is entitled to 'considerable deference,' its analysis must still document the 'perceived benefits of the higher priced proposal' relative to its 'additional cost.'" *Id.* at 460 (citations omitted).

The undersigned concurs that while the challenged best value decision at issue in this case might be ever-so-slightly more robust than those at issue in *Serco* and *Frawner*, the rationale of those well-reasoned cases compels a similar outcome here: additional documentation is required *if* WHS is going to stick with its selected contractor.

Nevertheless, the Court finds that, with respect to AccelGov's complaint, the parties' pending motions are **MOOT** because AccelGov, the government, and ISI-Markon have agreed to a remand pursuant to RCFC 52.2. Accordingly, this case is hereby **STAYED** for 90 days for the government to reconsider and reissue a best value determination consistent with the *Serco* and *Frawner* decisions. The government need only make a new best value determination with respect to AccelGov and ISI-Markon. This remand is also without prejudice to AccelGov; it may once again seek permanent injunctive relief should AccelGov challenge the new best value determination. In the meantime, AccelGov agrees that the government may proceed with its challenged award to ISI-Markon, while the government and ISI-Markon agree that the current stay will not preclude AccelGov from seeking a permanent injunction should AccelGov ultimately succeed on the merits in any subsequent complaint (*i.e.*, once the remand is complete). The government shall provide its new best value decision to AccelGov and ISI-Markon on or before September 25, 2024, and the parties shall file a joint status report on or before October 9, 2024, indicating how this case should proceed if at all.

\* \* \* \*

In sum, the Court directs as follows:

1. With respect to SLICOM, Case No. 24-493C, the government's and ISI-Markon's respective cross-MJARs are **GRANTED** and, accordingly, SLICOM's MJAR is **DENIED**. The Clerk is directed to enter **JUDGMENT** for the government and ISI-Markon, dismissing SLICOM's amended complaint.

2. AccelGov's case, Case No. 23-693C, is hereby **STAYED** for ninety (90) days and, pursuant to RCFC 52.2, is **REMANDED** to WHS to conduct a new best value determination, per the Court's directions *supra*. Notwithstanding RCFC 52.2(b)(2), counsel of record for the United States is directed to provide a copy of this order to

Agency counsel and the contracting officer, which shall constitute service pursuant to that rule.

**IT IS SO ORDERED**.

<u>s/ Matthew H. Solomson</u>
Matthew H. Solomson
Judge